# CHARLESTOWN.

## POE v. MACHINE WORKS.

Submitted June 17, 1884—Decided September 20, 1884.

1. *Certiorari* is an extraordinary remedy resorted to for the purpose of supplying a defect of justice in cases obviously entitled to redress and yet unprovided for by the ordinary forms of proceeding. (p. 520.)

2. The general rule is, that upon *certiorari* to an inferior court the court awarding the writ will only inquire into errors and defects which go to the jurisdiction of the court below. But in this State, if the inferior tribunal proceeds in a summary man-

ner and not according to the course of the common law, and there is no remedy by appeal or writ of error, then the courts will consider other than jurisdictional questions. (p. 520.)

3. It is well established as a general rule that when the party aggrieved can obtain redress by appeal or writ of error, he will not be allowed this unusual remedy. And in cases where he has permitted the time for appeal to expire, *certiorari* will not issue for relief, unless upon a special showing unmixed with any blame or negligence on the part of such party. (p. 521.)

4. The provision of section 12, article VIII of the Constitution of 1872 of this State, which declares that "the circuit courts shall have supervision of all proceedings before the county courts, and other inferior tribunals, by *mandamus, prohibition* and *certiorari,*" is restrained and limited in civil cases cognizable by a justice, with certain specified exceptions, by section 29 of the same article of the Constitution, which provides, that the decision of the county court shall be final in all cases of appeals from the judgment of a justice. By this inhibition it was intended not only that the circuit court should not supervise such cases by appeal or writ of error, but that all remedy should be denied by that court in such cases. (p. 522.)

5. Where an action was tried before a justice in 1876, and no effort was made to have the case re-tried by appeal to the county court, the party against whom the judgment was rendered in such case will not, after the time allowed for an appeal to the county court has expired, be permitted to have the case supervised by the circuit court by *certiorari,* even if the judgment of the justice is manifestly erroneous; it appearing that the justice had jurisdiction over the subject-matter and the person applying for the *certiorari.*

The facts of the case appear in the opinion of the Court.

*J. T. McGraw* for plaintiff in error.

*James Morrow jr.,* for defendant in error.

SNYDER, JUDGE :

On October 6, 1879, pursuant to written notice to the defendant previously given, Jasper Poe and John A. Boyce presented their petition to the circuit court of Taylor county and moved the court to award a writ of *certiorari* commanding Lewis Haymond, a justice of said county, to certify and produce before said court the record and proceedings in the action tried by him in which the Marion Machine Works

was plaintiff and petitioners were defendants. The defendant, the Marion Machine Works, appeared by counsel and demurred to the petition, which demurrer, being argued, was overruled by the court and the writ directed to issue, returnable, &c.

In compliance with the mandate of the writ the justice produced and certified to the court the record and proceedings had before him in said action, which record showed the following proceedings: On August 11, 1876, the Marion Machine Works commenced its action before said justice against petitioners to recover the sum of ninety dollars and seventy-two cents exclusive of interest, being the amount of a protested negotiable note given by the defendants, the petitioners, to the plaintiff for that sum, dated August 4, 1874, and due at sixteen months. The summons, as shown by the record, was, on August 17, 1876, "executed by delivering a copy to Jasper Poe; as to Boyce by sending him a copy." On August 18, 1876, a judgment was rendered against both defendants for ninety-six dollars and seventy-eight cents with interest, and two dollars and thirty-five cents costs. On September 23, 1879, the justice set aside the judgment as to Boyce, because rendered against him on an insufficient service of the summons as to him and awarded a new summons against him.

The case was heard on April 3, 1881, and the court, having duly considered the matters arising upon the *certiorari*, together with the transcript of the proceedings had in the case before the justice, dismissed the petition and writ of *certiorari* with costs. From this judgment the petitioner, Jasper Poe, was allowed a writ of error by a judge of this Court.

The plaintiff in error assigns as grounds of error in this Court: *First*, that the circuit court erred in refusing to annul the judgment of the justice against both the defendants therein; *second*, that said judgment, being joint and rendered upon an insufficient service as to Boyce, it should have been reversed and annulled as to both defendants; and *third*, that the court erred in dismissing the petition and writ of *certiorari*.

As these three assignments, in fact, constitute specifica-

tions of but one ground of alleged error, they may be properly and more conveniently considered under the single enquiry, did the court err in dismissing the writ of *certiorari?*

The use of this writ is now pretty well understood and its limits well defined, though the practice is not the same in all jurisdictions. It is generally used in such cases as might otherwise, without its intervention, leave the party remediless. It is considered as an extraordinary remedy resorted to for the purpose of supplying a defect of justice in cases obviously entitled to redress, and yet unprovided for by the ordinary forms of proceeding. Even in cases where the law has provided a remedy by writ of error or appeal this writ may, under special circumstances, be invoked, as for instance, if by the act of the court, either oppressively or erroneously, the writ of error or appeal is refused; or, if by the act of the clerk, negligently or wilfully caused, the writ of error was defeated; or, if by the contrivance or procurement of the adverse party the same result is effected; or, even, if by inevitable accident, or the misfortune without blame of the party injured he has been prevented from having the benefit of a second investigation of the facts of the cause, by the prescribed mode of a writ of error or appeal, *certiorari* may be resorted to as a substitute for redress. But in all cases the party, praying for this extraordinary remedy, must have merits on his side and pursue it in proper time. Time has always been considered an important circumstance in the application of this writ, and redress by this means should be sought as soon as possible after the happening of the event which rendered it necessary to resort to it— *Perkins* v. *Hadley,* 4 Hayw. 143; *Dousman* v. *St. Paul,* 22 Minn. 387.

But in all cases, if it appears that the proceeding complained of is chargeable to the negligence of the party invoking the writ, or that he has acquiesced for an unreasonable time, he cannot obtain relief by *certiorari*—*Hagar* v. *Supervisors,* 47 Cal. 222; *Dye* v. *Noel,* 85 Ill. 290.

The general rule is, that upon *certiorari* to an inferior court, the court from which the writ issues, will only enquire into errors and defects which go to the jurisdiction of the court below, and for all other errors or irregularities, the party

must resort to his remedy by appeal or writ of error. This rule has been frequently applied when the writ is sent to a justice of the peace, but it is equally applicable to any case where the writ issues to a court which proceeds according to the course of the common-law, whether of record or otherwise—*Hauser* v. *The State*, 33 Wis. 680. But in this State, if the inferior tribunal proceeds in a summary manner, and not according to the course of the common-law, and there is no remedy by appeal or writ of error, then the courts will consider other than jurisdictional questions—*Cunningham* v. *Squires*, 2 W. Va., 422; *Dryden* v. *Swinburne*, 20 *Id.* 89. However, the principle that, if the inferior court had jurisdiction, mere errors in the exercise of that jurisdiction cannot be corrected by *certiorari*, where there is any other available mode of redress, prevails very extensively—*Doolittle* v. *Galena R. R. Co.*, 14 Ill. 381; *Owens* v. *State*, 27 Wis. 456.

In *Duggen* v. *McGruder*, Walk. 112; S. C. 12 Am. Dec. 527, it was held, "If persons having a remedy by appeal permit the time to expire, *certiorari* will not issue for their relief, unless upon a special showing." And the general rule seems to be well established, that where the party aggrieved can obtain redress by appeal or writ of error, he will not be allowed the unusual remedy by *certiorari*. In such cases the courts will almost uniformly deny him the writ, and leave him to resort to some other equally efficient correctory proceeding—*Davis Co.* v. *Horn*, 4 Greene 94; *Petty* v. *Jones*, 1 Ired. 408; *Savage* v. *Gulliver*, 4 Mass. 178.

This Court in *Meeks* v. *Windon*, 10 W. Va., decided that "although it may be possible that the merits of the case have been erroneously decided, the writ of *certiorari* cannot be made a substitute for the inhibited appeal, writ of error or *supersedeas*, to review the case on its merits."

Generally the return to the writ is conclusive and no extrinsic evidence will be received either to support or overthrow the proceeding, order or judgment which is sought to be reviewed—*Fore* v. *Fore*, 44 Ala. 478; *Tewksbury* v. *Com'rs*, 117 Mass. 503; *Baizer* v. *Lasch*, 28 Wis. 268.

In the case before us there is no bill of exceptions, even if such could be allowed, and unless facts appear upon the record as returned by the justice which warrant the writ in

this case, the judgment of the circuit court must be affirmed.

It is suggested that the circuit court should have entertained the writ in this case under section 12 of article VIII of the Constitution of 1872, which provides as follows:

"The circuit courts shall have supervision of all proceedings before the county courts, and other inferior tribunals, by *mandamus, prohibition* and *certiorari.*"

The language here used is certainly comprehensive enough to embrace this case, but this provision is restrained and limited, in cases of the kind before us, by section 29 of the same article of the Constitution in the words following:

"The county court shall have jurisdiction of all appeals from the judgment of the justices, *and their decision upon such appeal shall be final in all cases,* except" &c., certain cases of which this is not one.

The provisions of the statute carrying into effect these mandates of the Constitution are the same as the Constitution itself—Acts 1872–3, chapter 13, section 6; and chapter 15, section 3. And section 3 of chapter 17 of same acts declares that "no petition shall be presented for an appeal from    *    *    *    any judgment of a county court which is rendered on an appeal from the judgment of a justice."

Provision for, and the regulation of, appeals from the judgments of justices to the county court are made in chapter 226 of the Acts of 1872–3. By section 118 of said chapter the justice is required to grant such appeals, as a matter of right, to the party applying at any time within ten days from the date of the judgment; and by section 128 appeals could be granted by the county court at any time after the expiration of said ten days if the appellant by his own oath or otherwise showed good cause for his not having taken such appeal within said ten days. It is true this section was so amended by chapter 63 of the Acts of 1877, as to limit the time within which the county court could grant an appeal to three months from the date of the judgment; but this act was not passed until more than six months after this judgment had been rendered, and if it had any effect on said judgment at all, the plaintiff in error here had more than nine months from the date of the judgment complained of to take his appeal.

But the plaintiff in error alleges in his petition to the circuit court for the writ, that he had no knowledge of the rendition of the judgment until January, 1879, long after his right to appeal had expired. This allegation is a positive contradiction of the record, because the return on the summons shows that he was served with process before the judgment was rendered. But, if he could be permitted to assail the return on the summons, he has not attempted to do so, and therefore, we must presume that his failure to appeal was caused by his own negligence. And such being the case, according to the principles hereinbefore announced, he can not resort to *certiorari* for redress.

It is, however, further claimed by the plaintiff in error, that because the judgment was against him and Boyce jointly, and being void for want of service on Boyce, it is erroneous as to him and should have been set aside by the circuit court. It may be conceded that the judgment as to the plaintiff in error was erroneous, but inasmuch as that error does not result from a want of jurisdiction in the justice, but merely an erroneous exercise of a conceded jurisdiction, the only remedy for the plaintiff in error was by an appeal and not by *certiorari*. By this writ he is not only seeking the aid of a writ to which he is not entitled, but he is attempting to force a jurisdiction on the circuit court which is positively prohibited by the Constitution. An appeal to the county court and not to the circuit court is the only remedy permitted by the Constitution. By declaring that no appeal shall be allowed by the circuit court from the judgment of a county court which is rendered on an appeal from a justice, the statute and the Constitution intended not only that no appeal should be allowed, but that any remedy by the circuit court should be denied in such cases—*Schuylerville, &c.*, v. *Betts*, 55 N. Y. 600; *Meeks* v. *Windon*, 10 W. Va. 180.

But in this case the judgment against Boyce, it is claimed, was void and not simply erroneous. If such is the fact, then the rule that a joint judgment against two which is merely erroneous as to one will be held erroneous as to both, does not apply; because if the judgment against one in such case is void, it is a nullity as to him, and the judgment against

the other will be valid and not erroneous.   It being void *in toto* as to the one, it was never a joint judgment, but only a judgment against the one as to whom the court had jurisdiction—*Gray* v. *Stuart*, 33 Gratt. 351.

For the foregoing reasons, I am of opinion that there is no error in the said judgment of the circuit court and that the same should be affirmed.

AFFIRMED.